WHITE et al., Appellants,

v.

AMERICA WEST AIRLINES, INC., Appellee.

[Cite as *White v. America West Airlines, Inc.,* 152 Ohio App.3d 14, 2003-Ohio-1182.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 02AP–312.

Decided March 13, 2003.

Murray, Murphy, Moul & Basil, L.L.P., and Joseph F. Murray, for appellants.

Andrew Law Offices, L.L.C., Craig D. Andrew and Shahela K. Parulkar, for appellee.

**16**

PETREE, Presiding Judge.

{¶ 1} Plaintiffs, Todd White and David Aronowitz, residents of Franklin County, Ohio, filed this action seeking damages arising from allegedly defamatory statements made by the pilots and/or crew members of defendant, America West Airlines, Inc. Plaintiffs filed their complaint against the defendant in the Franklin County Court of Common Pleas on December 8, 2000, alleging that the defendant's agents had made false and defamatory statements concerning the plaintiffs' reputation for honesty shortly after boarding America West Flight 2749 from Las Vegas, Nevada, to Columbus, Ohio.

{¶ 2} Defendant filed its answer on January 19, 2001. On February 7, 2002, defendant moved for judgment on the pleadings, arguing that the plaintiffs' claims were preempted by the Airline Deregulation Act ("ADA"). That motion was deemed untimely filed by the trial court on February 16, 2002. Thereafter, on February 20, 2002, defendant filed a motion to dismiss plaintiffs' complaint for lack of subject matter jurisdiction. An oral hearing was held by the trial court and, on February 25, 2002, the court concluded that plaintiffs' claims were preempted by the ADA. Consequently, the court determined that it lacked subject matter jurisdiction over those claims. In accordance with the trial court's ruling, plaintiffs' complaint was dismissed. Plaintiffs now appeal raising the following assignment of error for review:

{¶ 3} "The trial court erred in granting defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(H)(3) of the Ohio Rules of Civil Procedure."

{¶ 4} Plaintiffs held tickets for America West Flight 2749 on December 9, 1999, and were traveling with three other companions from Oakland, California, to Columbus, Ohio, with a change of aircraft in Las Vegas, Nevada. Based upon his frequent air travel, plaintiff Todd White was entitled to upgrade his ticket, as well as the ticket of a traveling companion, from coach to first class, provided that there was seating space available in the first class section of the aircraft.

{¶ 5} In accordance with the defendant's frequent-flyer policy, plaintiff upgraded his ticket from coach to first class several days prior to the departure of Flight 2749. However, at this point the parties' account of the events differ. According to the defendant, when White arrived at the airport terminal check-in counter, he asked to upgrade the coach ticket of his friend, Randy Coleman, to first class. At that time, there was space available on the flight leaving Oakland and arriving at Las Vegas. However, White was informed that no first-class seating was available on the flight leaving Las Vegas and arriving in Columbus. Conversely, plaintiffs claim that Coleman was issued a first-class upgrade through Las Vegas to Columbus.

{¶ 6} Plaintiffs claim that after they boarded the aircraft, Coleman "was ordered, without explanation, to leave his seat in the first class cabin and take his originally assigned seat in the coach class cabin." Plaintiffs further claim that they "sought an explanation from the flight crew, but their inquiries were rebuffed. Indeed, plaintiffs and their colleague were later removed from the aircraft and forced to take a later flight to Columbus. Because they did nothing wrong, Plaintiffs were baffled as to why they were removed." Id.

{¶ 7} On the other hand, defendant claims that White and Coleman each boarded the aircraft with a first-class boarding pass issued to Todd White. Initially, a flight attendant, Jeremy Bowles, resolved the situation by instructing White to seat himself in seat 3C, and Coleman to take seat 2C. However, shortly thereafter, another passenger with a ticket, boarding pass, and seat assignment of 2C entered the aircraft, and Coleman was asked to move to the coach section, as he did not have a first-class boarding pass or reservation.

{¶ 8} Defendant further claims that after Coleman was asked to move, he became very upset and began making demands as to how he would be compensated. The flight attendant then left the aircraft to speak with the gate agent, Amy Richards, and the gate supervisor, Chris Sciotto, both of whom entered the plane to resolve the problem. According to defendant, after being repeatedly asked to leave the first-class section, Coleman refused and became verbally abusive toward the defendant's employees. As a result, he was asked to leave the aircraft.

{¶ 9} Although Coleman eventually left the aircraft, he returned shortly thereafter and attempted to enter the cabin where the pilots were seated. At this point, White interrupted, and Sciotto asked Coleman to leave a second time. Eventually, Aronowitz approached the group and stated that he was traveling with Coleman. The argument continued, and all three passengers were asked to leave the aircraft so that they could take a later flight.

{¶ 10} Defendant contends that after White was unsuccessful in upgrading Coleman's ticket to first class seating from Las Vegas to Columbus, they attempted to have Coleman seated in first class by having two boarding passes issued to White. After the disturbance and resultant delay in departure, the captain addressed the passengers and apologized for the disturbance. Defendant maintains that no names were mentioned, nor were any comments made by crew members. However, plaintiffs argue that the announcement was defamatory, entitling them to damages. Coleman chose not to sue defendant, even though the incident, delay, and ensuing announcement were the result of his conduct.

{¶ 11} As set forth above, plaintiffs contend that the trial court erred when it concluded that it lacked subject matter jurisdiction over the plaintiffs' claim. We agree. There is one main and one ancillary issue presented in this appeal. Although not specifically incorporated into the plaintiffs' assignment of error, the

**18**

first is whether the trial court should have addressed the defendant's motion to dismiss on the basis of lack of subject matter jurisdiction.

{¶ 12} In their brief, plaintiffs point out that the arguments presented in the defendant's brief were first presented in defendant's motion for judgment on the pleadings, which was filed after the dispositive motions deadline set by the trial court in this case. Plaintiffs moved to strike this motion, which was granted. Thereafter, defendant presented essentially the same argument in its Civ.R. 12 motion to dismiss, which is the subject of this appeal. Plaintiffs contend that this was improper. However, Civ.R. 12(B) provides:

{¶ 13} "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter * * *."

{¶ 14} More important, however, Civ.R. 12(H)(3) provides:

{¶ 15} "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."

{¶ 16} It is well settled that a court's lack of subject matter jurisdiction can and should be raised at any time during the course of a legal proceeding. *In re Byard* (1996), 74 Ohio St.3d 294, 658 N.E.2d 735. Accordingly, the trial court properly considered the defendant's motion to dismiss.

{¶ 17} The chief issue presented is whether the ADA preempts plaintiffs' state common-law claim for defamation. The preemption provision contained within the ADA provides that a state may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier. Section 41713(b)(1), Title 49, U.S.Code. Despite the defendant's arguments to the contrary, it seems relatively clear to this court that a defamatory statement does not relate "to a price, route, or service of an air carrier."

{¶ 18} Despite our best efforts to do so, we have been unable to conceive of any situation where a defamatory statement is a "service" of an airline. Moreover, recovery in a state court of law for the tort of defamation does not in any way regulate a defendant air carrier, nor does it touch upon the carrier's establishment of routes or prices. State courts have jurisdiction to consider all claims and defenses, even those grounded in federal law, except where the doctrine of complete preemption applies. *Musson Theatrical, Inc: v. Fed. Express Corp.* (C.A.6, 1996), 89 F.3d 1244. As correctly noted by plaintiffs,

the doctrine of complete preemption removes a state court's constitutional primacy "only in the extraordinary circumstance when Congress intends, not merely to preempt a certain amount of state law, but also to transfer jurisdiction to decide the preemption question from state to federal courts." Id. at 1253, citing *Metro. Life Ins. Co. v. Taylor* (1987), 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55.

{¶ 19} We have examined the legislative history of the ADA but have been unable to find a patent intent to remove from state courts the ability to adjudicate defamation claims and transfer that jurisdiction to federal courts. We have also carefully examined the cases brought to our attention by defendant; however, we conclude that they also have not interpreted the ADA in the manner posited by the defendant. For example, defendant directs our attention to the case of *Galbut v. Am. Airlines, Inc.* (E.D.N.Y.1997), 27 F.Supp.2d 146, and quotes the following language in support of its argument:

{¶ 20} "The *Galbut* court held that the defendant airline's activity was preempted by the ADA because the agent's refusal to permit the plaintiff to upgrade using the upgrade sticker was a 'service' and the plaintiff's claims affected the airline service directly in that 'it relate[d] specifically to defendant's upgrade policies and the manner in which defendant's employees carr[ied] out those policies when they believe[d] that a passenger [was] not properly ticketed.'"

{¶ 21} In this case, however, it is perfectly clear that plaintiffs have not presented a claim that the airline improperly denied them or Coleman a ticket upgrade. Rather, plaintiffs' claim is that the airline uttered defamatory statements against them. Defendant's protestations to the contrary, we are unable to find that defendant's alleged tortuous activity in this case, or in any other case, constitutes a "service," as that term is used in the ADA. In other words, we readily disagree with defendant's assertion that the commission of torts against its patrons is part and parcel of its customer service.

{¶ 22} Accordingly, plaintiffs' assignment of error is sustained, the judgment of the Franklin County Court of Common Pleas is reversed, and this cause is remanded to that court for further proceedings in accordance with law and consistent with this opinion.

Judgment reversed
and cause remanded.

DESHLER and BROWN, JJ., concur.